# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

VIVIAN E. A. McALEXANDER,

       Plaintiff,

v.                                                                                                                                                                             No. CIV 01-579 MCA/LFG

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

       Plaintiff Vivian E. A. McAlexander ("McAlexander") invokes this Court's jurisdiction under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner determined that McAlexander was not eligible for supplemental security income ("SSI"). McAlexander moves this Court for an order reversing the Commissioner's final decision and remanding for a rehearing. [Doc. 10.]

       McAlexander was born on August 26, 1958 and was 41 years old when the administrative hearing was held. She has a high school diploma and attended two years of college. In the early 1980's, she took a dental assistant course and obtained her certification. In about 1983, she moved

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

to Socorro, New Mexico. She presently lives there with her parents and receives food stamps. She previously worked as a high school substitute teacher, a dental care assistant, a security officer, a magazine illustrator, and a graphic artist. She states that she became totally disabled on May 25, 1996,[2] because the pain in her lower back was unbearable and also from the stress of substitute teaching. McAlexander asserts that the most significant physical, mental and/or medical problems that prevent her from working are her anxiety, depression and back pain. McAlexander apparently has not held a full-time job for some time although she freelances as a magazine illustrator.

On about July 14, 1998, McAlexander applied for SSI. Her application was denied at the initial and reconsideration stages, and she sought timely review from an Administrative Law Judge ("ALJ"). An administrative hearing was held on January 11, 2000 before ALJ Gerald R. Cole. In a through and carefully reasoned decision, dated April 25, 2000, Judge Cole found that McAlexander was not disabled within the meaning of the Social Security Act ("the Act") and denied the benefit request. McAlexander challenged this determination, and the Appeals Council denied her request for review on April 12, 2001. This appeal followed.

## **Standards for Determining Disability**

In determining disability, the Commissioner applies a five-step sequential evaluation process.[3] The burden rests upon the claimant to prove disability throughout the first four steps of this process, and if the claimant is successful in sustaining her burden at each step, the burden then shifts to the

---

[2] While McAlexander contends that the onset of her disability was in May 1996, an individual may become eligible for SSI no earlier than the date of the application for benefits, i.e., July 14, 1998. *See* 42 U.S.C. § 1382(c)(7); 20 C.F.R. §§ 416.335, 416.501.

[3] 20 C.F.R. § 404.1520(a)-(f) (1999); <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988).

2

Commissioner at step five. If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.[4]

Briefly, the steps are: at step one, claimant must prove she is not currently engaged in substantial gainful activity;[5] at step two, the claimant must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . .,"[6] at step three, the Commissioner must conclude the claimant is disabled if she proves that these impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1 (1999);[7] and, at step four, the claimant bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work.[8] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, at step five, that considering claimant's residual functional capacity ("RFC"),[9] age, education and past work experience, she is capable of performing other work.[10] If the Commissioner proves other work exists which the

---

[4] 20 C.F.R. § 404.1520(a)-(f) (1999); Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989).

[5] 20 C.F.R. § 404.1520(b) (1999).

[6] 20 C.F.R. § 404.1520(c) (1999).

[7] 20 C.F.R. § 404.1520(d) (1999). If a claimant's impairment meets certain criteria, that means her impairment is "severe enough to prevent [her] from doing any gainful activity." 20 C.F.R. § 416.925 (1999).

[8] 20 C.F.R. § 404.1520(e) (1999).

[9] One's RFC is "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a). The Commissioner has established RFC categories based on the physical demands of various types of jobs in the national economy. Those categories are: sedentary, light, medium, heavy and very heavy. 20 C.F.R. § 405.1567 (1999).

[10] 20 C.F.R. § 404.1520(f) (1999).

3

claimant can perform, the claimant is given the chance to prove she cannot, in fact, perform that work.[11]

The ALJ can meet his burden of proof at step five in two ways: (1) by relying on a vocational expert's testimony; and/or (2) by relying on the "appendix two grids." Taylor v. Callahan, 969 F. Supp. 664, 669 (D. Kan. 1997). For example, expert vocational testimony might be used to demonstrate that the plaintiff can perform other jobs in the economy. Id. at 669-670. Before applying the grids, the ALJ must first find the following: "(1) that the claimant has no significant non-exertional impairment; (2) that the claimant can do the full range of work at a particular residual functional capacity on a daily basis; and (3) that the claimant can perform most of the jobs in that residual functional capacity category." Id. at 669 (*relying on* Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993)). Non-exertional limitations can include mental impairments. The grids do not consider non-exertional limitations; therefore, if significant non-exertional limitations are present, the grids may not be applicable. Id. However, the "mere presence of a nonexertional impairment does not preclude reliance on the grids, but the nonexertional impairment must interfere with the ability to work." Id. (internal citations omitted.) In this case, the ALJ utilized a vocational expert at the hearing in reaching his determination of non-disability at step five of his analysis.

## Standard of Review and Allegations of Error

On appeal, the Court considers whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than

---

[11]Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

a mere scintilla, but it need not be a preponderance. Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992); Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). The Court's review of the Commissioner's determination is limited. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1497 (10th Cir. 1992). The Court's function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied. Id. at 1497-98. In Clifton v. Chater, the Tenth Circuit described, for purposes of judicial review, what the record should show:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence he rejects.

Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (internal citations omitted). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. The Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir. 1991).

After carefully reviewing McAlexander's sparse medical records and her testimony during the hearing, the ALJ rejected her's claim for SSI at step five, concluding that there are jobs in the regional and national economy that McAlexander can perform that would allow her alternate sitting, standing and walking throughout the work day as needed. (Tr. at 19-20.) In reaching this decision, Judge Cole considered the testimony of the Vocational Expert ("VE") and first made the following findings: (1) McAlexander had not engaged in substantial gainful activity during the period under review; (2) McAlexander alleged impairments of chronic back pain, arthritis in multiple joints, obesity, post-

traumatic stress syndrome ("PTSD"), chronic anxiety, and depression;[12] (3) McAlexander's impairments did not meet or equal any of the Listings; and (4) she was unable to return to any category of her past relevant work.

The burden then shifted to the Commissioner at step five to show that McAlexander's age, education, work experience and RFC would permit her to successfully adapt to a significant number of jobs available in the regional and national economy and that there were jobs existing in significant numbers in the regional and national economy that she could perform. The ALJ decided that McAlexander had the RFC to support work that was available, provided that the work allowed her to alternate sitting, standing and walking during her work day. Therefore, Judge Cole concluded that McAlexander was not disabled under the SSA at any time through the date of his decision.

In the decision, Judge Cole also determined that McAlexander did not satisfy her burden in showing that she had an underlying severe mental disorder. In addition, the ALJ found that her testimony and the medical reports discussing her condition(s) did not support the degree of disability alleged and further that McAlexander's testimony regarding her pain and/or alleged impairments was not supported by the objective medical evidence and x-rays. [Tr. at 18, 19.]

In this appeal, McAlexander asserts that the case must be reversed and remanded because the ALJ failed to develop the record, his credibility findings were contrary to the evidence and law, and he committed error by finding that McAlexander's alleged mental impairment was nonsevere.

---

[12]It is not clear from the opinion whether Judge Cole actually found any of the alleged impairments or combination of impairments to be "severe" as required at step two of the analysis. However, based on the fact that Judge Cole proceeded with the five-step evaluation process and accorded McAlexander the benefit of the doubt on several occasions, the Court assumes, without deciding, that step two was satisfied.

[Doc. 11.] The Commissioner claims the ALJ's decision was supported by substantial evidence and represented a correct application of the regulations. [Doc. 12.]

After a review of the entire record, this Court agrees that there was substantial evidence to support the ALJ's findings and disagrees that Judge Cole committed any reversible error in the five-step sequential analysis. Therefore, the Court recommends that McAlexander's motion to reverse be denied.

## Summary of McAlexander's Health-Related Complaints

It appears that many of McAlexander's alleged physical complaints are due to her weight. On October 19, 1998, when Dr. Reeve examined McAlexander for purposes of her disability claim, she weighed 230 pounds. Dr. Reeve's impressions were: morbid obesity; joint pain, secondary to weight; no significant clinical abnormalities and reported knee surgeries. [Tr. at 147.] He stated that "[h]er obesity is significant and is causing significant strain in all her major joints" and that he believed her obesity to be the "primary cause of her discomfort." [Tr. at 148.] Dr. Reeve concluded that she should return to a working situation, although in the light to sedentary range. [Tr. at 148.]

There are very few medical records to review. According to McAlexander's disability report and her letter, she had a congenital birth defect that caused her left foot to turn inwards. [Tr. at 101.] She fractured both knees when she was about five years old, and a portion of one knee cap was removed in about 1979. [Tr. at 93-98, 99.] In 1969 or 1970, a "bully" pushed her down some stairs and she broke her right ankle. [Tr. at 101.] In the 1980's when she was working as a dental assistant, she had some problems with her lower back and received some chiropractic care, although there are no related medical records. [Tr. at 100.] She explains that she gained a lot of weight after gallbladder surgery in 1987. [Tr. at 101.] Her problems with her knees, hip, ankles and back have

7

worsened over time and her back pain became particularly pronounced in 1993 when she moved to Socorro, which required her to lift and move boxes. [Tr. at 93-98, 111.]

Since her gallbladder surgery, she has been a vegetarian and states that her weight gain is not due to poor eating. She provides this explanation because she believes that the doctor who examined her in relation to a prior application for SSI benefits (that apparently was denied), inappropriately attributed her weight to her eating habits. [Tr. at 102-03.]

McAlexander saw Dr. Reid periodically during 1996 - 1998 for bronchial problems and an abnormal pap smear. [Tr. at 138-144, 201.] Those medical records do not document any complaints about back, hip, ankle or knee pain. In fact, McAlexander admits that she did not see Dr. Reid for her "bone/muscle related problems." [Tr. at 99.]

It appears that McAlexander did not see a physician for her back pain until after she applied for disability and was denied benefits in February 1999 [Tr. at 69]. The first medical record regarding complaints of low back pain is dated April 15, 1999. [Tr. at 181, 213.] On that date, she saw Dr. Vega for a routine Pap smear but also complained of chronic low back strain and right hip pain. She informed Dr. Vega that she had intermittent right leg numbness. McAlexander had never had an x-ray or MRI. Dr. Vega prescribed some muscle relaxants, and McAlexander takes anti-inflammatory medication. [Tr. at 47-48.] Dr. Vega suggested McAlexander consider chiropractor manipulation. [Tr. at 182.] In December 1999, McAlexander requested an x-ray of her back. [Tr. at 210.] The x-ray showed "normal alignment without compression fracture nor displacement. Disc spaces and bilateral pars are well maintained." [Tr. at 189.] A radiology report, dated June 7, 2000, noted mild annular bulging of the L4-5 disc, "otherwise negative CT of the lumbar spine." [Tr. at 192.] There was no large, focal disc herniation or significant spinal stenosis. [Id.]

8

McAlexander also claims that she suffers from depression and anxiety since about 1996. Her depression/anxiety is apparently related to her work as a substitute teacher in Socorro High School. She claims that it became known at the school that she is a lesbian and that she experienced harassment about her sexuality and race (Caucasian) from students and the administration. [Tr. at 41, 162.] She quit her substitute teacher work in May 1996 and states she has problems with insomnia and nightmares as a result of that job. She has not had any psychotherapy and has not taken anti-depressant medication. [Tr. at 163.]

In October 1998, Dr. Reeve examined McAlexander in relation to her disability request and took x-rays. [Tr. at 147.] Dr. Reeve noted that the "AP and lateral views demonstrate normal appearing lumbosacral spine. The unilateral hip x-ray demonstrated no evidence of hip dislocation, subluxation. No evidence of arthritis. The knee x-rays demonstrated . . . no evidence of significant joint deformity, no evidence of degenerative changes." [Tr. at 147.]

McAlexander was given a residual physical functional capacity assessment for low back pain syndrome in January 1999. [Tr. at 154-161.] The physician concluded that she could occasionally lift 20 pounds and frequently lift 10 pounds. She could stand or walk for a total of about 6 hours per 8 hour work day, and she could sit for a total of about 6 hours. [Tr. at 155.]

On April 15, 1999, McAlexander was given a psychiatric examination for purposes of her disability claim. Dr. Sacks' assessment included that she appeared to be experiencing PTSD as a result of the alleged harassment at the high school. However, he did not consider her to be "experiencing a medical depression, per se, at the present time." [Tr. at 166.] She was given a global assessment of functioning of 75. [Tr. at 167.] While she was having difficulties relating with fellow workers and supervisors at the high school, Dr. Sachs felt that she could work with others in another

9

setting. "She could probably withstand the stress and pressures associated with day-to-day work activities at a moderate level." [Tr. at 167.] "[H]er psychiatric impairment" was "moderate." [Id.]

At the administrative hearing on January 11, 2000, she testified that she rarely got a good night's rest due to pain and anxiety. [Tr. at 53.] On January 12, 2000, she wrote a letter to her counsel that is a part of the administrative record stating that her constant back pain contributes greatly to her sleep problems. [Tr. at 8-10.]

## Discussion

### I. DEVELOPMENT OF THE RECORD

Plaintiff argues that the ALJ did not fully develop the record as to McAlexander's alleged chronic back pain and arthritis. [Doc. 11, pp. 3-4.] As of the date of the administrative hearing, the ALJ apparently did not have all of the medical records, particularly those from Dr. Vega. Judge Cole explained that once he received those records, he would determine the need for an additional consultative exam or further hearing. [Tr. at 64.] After reviewing the submitted records, no additional hearing or medical exam were ordered, even though McAlexander argues that the ALJ's duty to order an additional consultative evaluation was triggered.

It is true that in a nonadversarial social security setting, the ALJ has a duty to "ensure that an adequate record is developed during the disability hearing consistent with the issues raised." Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th Cir. 1993). The responsibility to develop an adequate administrative record may include ordering a consultative examination. Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997). However, the Secretary has broad latitude in deciding the need for such an examination. Diaz v. Secretary of HHS, 898 F.2d 774, 778 (10th Cir. 1990). Further, "[t]he ALJ does not have to exhaust every possible line of inquiry in an attempt

to pursue every potential line of questioning. The standard is one of reasonable good judgment." Hawkins, 113 F.3d at 1168. If for example, there is a direct conflict in the medical evidence that requires resolution or if the medical evidence is inconclusive, a consultative examination might be appropriate. Id. at 1166. *See* 20 C.F.R. § 404.1512(f); 20 C.F.R. § 404.1519a (providing standards for a consultative examination).

In other words, if there is some objective evidence in the record suggesting the existence of a condition that could have a material impact on the ALJ's disability determination, then the duty to further develop the record by ordering a consultative examination might be triggered. Hawkins, 113 F.3d at 1166-67. To require additional investigation into the disability claim, the claimant must raise the issue to be developed and show that it is substantial.

> Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, ***and only then***, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.

Id. at 1167 (emphasis added). The need for a consultative exam will not be triggered based on isolated and unsupported comments by the claimant.

Here, McAlexander's argument that the ALJ did not fully develop the record borders on frivolous. For one thing, there were consultative examinations performed on McAlexander. Dr. Reeves examined McAlexander in October 1998, with respect to her alleged exertional impairments. His report cannot be misconstrued. None of the objective medical testing supported McAlexander's claim of total disability. Indeed, Dr. Reeves concluded that McAlexander should work, *albeit* in light

or sedentary jobs. Moreover, the RFC assessment confirmed Dr. Reeve's assessment that McAlexander was capable of working.

Another consultative examination was performed as to McAlexander's claims regarding depression and/or anxiety. The physician concluded that McAlexander's psychiatric impairment was "moderate" and that she was not medically depressed as of that date. He, too, determined that she was capable of working.

None of McAlexander's medical records or reports conflict with these findings. Indeed, McAlexander apparently has produced no medical records prior to her disability application to support a finding of serious impairment. Even the records supplied after her disability application do not indicate that McAlexander is unable to work. To the contrary, the x-ray reports ordered by Dr. Vega again indicated essentially normal results.

There simply is no conflict in the evidence under these facts and there are no inconclusive medical records that require further development by the ALJ. McAlexander's isolated and unsupported complaints are insufficient to trigger the duty of yet additional consultative examinations. Moreover, the ALJ cannot be faulted for McAlexander's absolute lack of objective evidence in support of her claim. Therefore, Plaintiff's argument regarding development of the record is rejected.

## II.  CREDIBILITY FINDINGS

McAlexander also argues that the ALJ's finding that her complaints of pain were not credible should be reversed. McAlexander specifically complains that the Judge Cole improperly assessed her credibility based on the results of the "Waddell test" performed by Dr. Reeves and on an "off-the-record" comment she purportedly made as she left the administrative hearing, to the effect that her I.Q. was 160 and she was not about to take a minimum wage job. [Tr. at 19.]

The Court should defer to the ALJ as the trier of fact on questions of credibility because he or she is the "individual optimally positioned to observe and assess witness credibility." Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991). In making his determinations, the ALJ considers the medical evidence, the claimant's responses to questions during the hearing regarding daily activities, and the claimant's appearance and demeanor at the hearing. Brown v. Bowen, 801 F.2d 361, 362-63 (10th Cir. 1986).

A claimant's testimony alone cannot establish the existence of disabling pain. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment, that could reasonably be expected to produce the alleged disabling pain."

Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (internal citations omitted). The framework used for proper analysis of a claimant's evidence of pain consists of the following elements:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, claimant's pain is in fact disabling.

Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir. 1987). To find McAlexander's pain disabling, there must be medical evidence showing that the pain is "so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Brown v. Bowen, 801 F.2d at 362-63 (internal quotation omitted). Other factors pertinent to the ALJ's credibility determinations are: "a claimant's persistent attempts to find relief for [her] pain and [her] willingness to try any treatment

13

prescribed, regular use of crutches or a cane, regular contact with a doctor . . ., the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." Luna, 834 F.2d at 165-66.

Here, the ALJ examined the medical records and consultative physician's reports. He noted that Dr. Reeve found no significant clinical abnormalities and *also* that five out of five Waddell's signs were positive, indicating that she was exaggerating her difficulties. [Tr. at 19.] "Waddell signs are indications of non-organic causes of back pain; that is, signs that a patient's reported pain has a behavioral origin." Brazile v. Apfel, 113 F.Supp.2d 181, 187 n. 2 (D. Mass. 2000) (internal citation omitted). Judge Cole discussed the consultative examiner's opinion that McAlexander should return to work and be more active. The ALJ's decision addressed the results of her x-rays that showed an absence of any abnormal spinal condition, and the fact that her treating physician did not diagnose her with any back or joint condition that accounted for her symptoms. [Tr. at 19.]

Clearly, Judge Cole's credibility findings were supported by substantial evidence. First, it appears doubtful that McAlexander established a pain-producing impairment through objective medical evidence. Second, there is no medical evidence to show that her pain is "so severe" as to be medical disabling. No doctor has reached that conclusion. Moreover, there is no medical evidence demonstrating persistent efforts by McAlexander to find relief for the alleged pain. She has not visited a physician regularly due to complaints of pain and apparently has tried very little pain medication.

Judge Cole also properly considered her basic activities, in reaching his determination. [Tr. at 18.] She draws, paints and writes. [Tr. at 18.] McAlexander likes to play scrabble and watches pro-wresting on TV with her mother. She is working on a book She enjoys researching ancient civilizations. She helps with the household chores, and can sweep, mop and vacuum. She does some

shopping and cares for pets. She walks for exercise and can walk half the around the football field. [Tr. at 35, 37, 40, 52.]

The fact that Judge Cole addressed McAlexander's off-the-record comment regarding her supposed unwillingness to take a minimum wage job does not require reversal. This was only one of a number of factors discussed by the ALJ. Moreover, Judge Cole is entitled to consider the claimant's demeanor and appearance at the hearing which might include a comment he hears her make. For all of these reasons, this Court concludes that the ALJ's credibility findings are supported by substantial evidence and will not be disturbed.

## III.  PLAINTIFF'S MENTAL IMPAIRMENT

McAlexander briefly argues that her alleged mental impairment should have been found "severe" rather than nonsevere at step two of the sequential evaluation. Again, Plaintiff's argument is rejected as lacking virtually any merit.

The ALJ carefully and thoroughly discussed why he found that McAlexander did not meet her burden of demonstrating a severe mental disorder. He noted first that a finding of a nonsevere mental impairment was consistent with the medical consultant's opinion and not inconsistent with the opinion of any treating physician or evidence. [Tr. at 18.] This certainly cannot be challenged by Plaintiff for the evidence is unambiguous and uncontradicted. McAlexander herself, as noted by the ALJ, admitted that she did not receive any treatment for a mental condition from any source. She never was referred for psychotherapy. The consultative psychiatrist concluded that while she may have PTSD from her teaching experience, any mental impairment was "moderate" and she was not medically depressed. As discussed by the ALJ, the results of her examination showed that her thought processes were normal, she was fully oriented, she was in contact with reality, her memory

15

was good, and her abilities for attention and concentration were adequate. [Tr. at 18.] Her activities, that include writing, illustrating and reading about ancient civilization, support the ALJ's determination.

## Conclusion

The Court concludes that the ALJ's decision was supported by substantial evidence. Indeed, the objective medical evidence in the record would not support any conclusion but that which the ALJ reached. Moreover, none of the subjective evidence in the record provides a basis for reversing and remanding the ALJ's decision.

## Recommended Disposition

I recommend that Plaintiff's Motion to Reverse and Remand for Rehearing [doc. 10] be denied for the above-explained reasons and that this matter be dismissed with prejudice.

Lorenzo F. Garcia
United States Magistrate Judge